UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| FRACTUS, S.A.<br><br>    Plaintiffs,<br><br>v.<br><br>AT&T MOBILITY, LLC, et al.<br><br>    Defendants. | Civil Action No. _____<br><br>Principal case pending in the United States District Court for the Eastern District of Texas, Marshall Division; Case No. 2:18-cv-00135-JRG |

## NON-PARTY AMERICAN TOWER CORPORATION'S
## MOTION TO QUASH THIRD-PARTY SUBPOENA

Non-party American Tower Corporation ("ATC") respectfully moves the Court, pursuant to Federal Rules of Civil Procedure 45(d)(3), for an Order quashing the Third-Party Subpoena *Duces Tecum* (the "Subpoena") served on it by a plaintiff in a sprawling lawsuit being litigated in the United States District Court for the Eastern District of Texas in which ATC is not a party and has no interest. A true and correct copy of this subpoena along with the attendant document requests is attached hereto as Exhibit A. ATC is filing this motion in this Court pursuant to Rule 45(d)(3) because the Place of Compliance is located within the District of Massachusetts.

### BACKGROUND

On September 10, 2018, Plaintiff Fractus, S.A. ("Fractus") served non-party ATC with a Third-Party Subpoena to Produce Documents, Information, or Objects (the "September Subpoena"). A true and correct copy of this subpoena is attached hereto as Exhibit B. ATC is not now, nor has it ever been, a party to or interested in the above-captioned litigation. Bergendahl Declaration ¶ 3 ("Bergendahl Decl."), attached hereto as Exhibit C. By way of the September Subpoena, Fractus essentially sought any and all documents within ATC's possession, custody, or control relating to the defendants in the litigation. These defendants are

1

AT&T Mobility, LLC ("AT&T"); Sprint Communications Company, L.P., Et al. ("Sprint"); T-Mobile U.S., Inc., Et al. ("T-Mobile"); and Cellco Partnership d/b/a Verizon Wireless ("Verizon") (collectively, the "Defendants"). Further, the September Subpoena sought a host of documents completely unrelated to the Defendants and irrelevant to this case. After much wrangling over this over-broad and burdensome subpoena—which involved counsel for ATC repeatedly pointing out to Fractus's counsel that much, if not all, of the information sought by the September Subpoena would be discoverable via the Defendants—Fractus acknowledged that the Defendants should have the documents and be able to produce them. Bergendahl Decl. ¶ 4. Accordingly, Fractus agreed to indefinitely suspend the response deadline for the September Subpoena. *Id*.

Then, on March 1, 2019, with less than a day's prior notice to ATC or its counsel, Fractus served the Subpoena on ATC, which seeks to depose a corporate representative of ATC in Boston, Massachusetts on March 28, 2019 on a broad range of topics essentially encompassing every detail of ATC's business relationship with each and every Defendant. In addition, the Subpoena seeks to compel the corporate deponent to bring with him or her a massive amount of documents to the deposition. Specifically, the Subpoena lists six "Deposition Topics." These topics are:

- "The use, lease, access, or acquisition by any Defendant [and four related parties] (or any agent acting on behalf of any of the foregoing), of space located on your U.S. cell sites during the Relevant Period[1] (including amounts that you charged and/or collected for that purpose; the relevant pricing structures; and demands or negotiations with Defendants in relation to pricing, invoiced amounts, or rate structures)." Ex. A, "Deposition Topics," ¶ 2.

- "Your awareness of any costs or expenses (including capital expenses, operating expenses, or otherwise) that a mobile network operator or base station antenna

---

[1] The "Relevant Period" is defined in the Subpoena as "beginning January 1, 2012, including, where applicable, any time in the future." Ex. A, "Definitions," ¶ 14.

2

manufacturer incurs relating to base station antennas that are located on U.S. cell sites. This includes, but is not limited to, your awareness of any strategy or method for any mobile network operator to realize cost savings, and your analysis of any expenses or cost savings." Ex. A, "Deposition Topics," ¶ 3.

- "To the extent not duplicative of prior topics, the U.S. cell sites on which any Defendant had or used a base station antenna during the relevant period, including: (i) their geographic location; (ii) the maximum number of base station antennas permitted on each such cell site; and (iii) any other restriction by size, volume, environmental requirement, zoning requirement, aesthetic, or otherwise, on base station antennas located on the cell sites, or on the cell sites more generally." Ex. A, "Deposition Topics," ¶ 4.

- "To the extent not duplicative of prior topics, your contractual relationships and/or collaborative endeavors (whether by agreement, partnership, joint venture or otherwise) with any Defendant(s) concerning the actual or prospective construction, purchase, acquisition, operation, ownership, leasing, access or use of any U.S. cell site during the Relevant Period. This includes, among other things, the terms of any such contract or relationship, and your understanding of the reasons for, and the purposes or benefits of, those collaborations." Ex. A, "Deposition Topics," ¶ 5.

- "To the extent not duplicative of prior topics, all communications with any Defendant(s) about the relationships or endeavors to which the preceding topic refers, or any issue referenced in the preceding Topics." Ex. A, "Deposition Topics," ¶ 6.

Further, the Subpoena lists as a deposition topic knowledge of how the documents the Subpoena seeks the production of "were generated, prepared, maintained and/or collected, and by whom." Ex. A, "Deposition Topics," ¶ 1. The documents the Subpoena seeks[2] are incredibly extensive, and are:

- "Contracts between you and any Defendant (including any master agreements, statements of work, modifications, or subsidiary agreements under a master agreement) entered into or in effect for the Relevant Period." Ex. A., "Documents Requested," ¶ 1.

- "Documents sufficient to show the amounts you invoiced to each Defendant for the lease of, use of, acquisition of, construction of, or access to your cell site real estate and the date of such invoices for the Relevant Period." Ex. A., "Documents Requested," ¶ 2.

- "Documents sufficient to show (i) the average cell site rental or sales costs that you charged by year, for the Relevant Period and (ii) if kept in the ordinary course of

---

[2] Although the Subpoena's document request is mildly narrower than the range of documents sought in the September Subpoena, that does less to show the reasonableness of the current request than it shows the absurdly broad nature of the September Subpoena.

3

business, average cell site rental or sales costs broken out by the following characteristics: type of cell site (tower or rooftop), geographic location of the cell site, setting of the cell cite (*sic*) (urban, suburban, or rural), or dimensions and capacity (e.g., maximum towerload or maximum windload)." Ex. A., "Documents Requested," ¶ 3.

- "The characteristics of your cell sites to which the invoiced amounts requested in Request No. 2 relate (e.g., tower vs. rooftop; urban, suburban or rural; dimensions; maximum capacities); and the percentage of maximum capacity that remained unused for the time interval (e.g., month or year) that corresponds to the invoiced amounts." Ex. A., "Documents Requested," ¶ 4.

- "Any documents reflecting or mentioning that any Defendant was seeking a more sustainable, cost effective or cheaper solution for cell site real estate, including materials reflecting demands or negotiations with or on behalf of any Defendant, in which a defendant's desire for a lower price or cheaper pricing structure was conveyed." Ex. A., "Documents Requested," ¶ 4.

Pursuant to Fed. R. Civ. P. 45(d)(B), the deadline for ATC to respond and object to the Subpoena is March 15, 2019 for ATC. Counsel for ATC has attempted to work with counsel for Fractus on these issues, and sought to extend the response deadline. Bergendahl Decl. ¶ 7. Rather than work with ATC—again, a non-party to the underlying lawsuit—Fractus demanded that ATC produce a vast array of documents in order for a one-week extension of the deadline. Bergendahl Decl. ¶ 8. As a justification for Fractus's position, Fractus stated that its discovery deadline was April 15, 2019. *See* Bergendahl Decl. ¶ 9. Accordingly, ATC was forced to file this Motion to Quash.

## ARGUMENT

All discovery requests are "subject to the proportionality considerations articulated in Fed. R. Civ. P. 26(b)(1)." *Johansen v. Liberty Mutual Group, Inc.*, No. 15-cv-12920-ADB, 2017 WL 6045419, at *8 (Dec. 6, 2017). These considerations are "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P.

26(b)(1).  Both proportionality and relevance place "limits on the discovery to which Plaintiff is entitled." *Sustainable Sourcing, LLC v. Brandstorm, Inc.*, No. 12–30093, 2017 WL 217747, at *2 (D. Mass. Jan. 18, 2017).

With these principles in mind, it is clear that this Court should quash the Subpoena.  The deposition topics and document requests are not proportional to the needs of the case on their face.  Specifically, the Subpoena imposes an undue burden on non-party ATC because it is overly broad; would cause great expense and inconvenience to ATC; and, the information is, or should be, readily available from parties to the litigation (*i.e.*, the Defendants).  The Court should also quash the Subpoena because it requires the disclosure of ATC's confidential commercial information, the disclosure of which would significantly harm ATC.

I.     **The Subpoena Imposes an Undue Burden Because It Is Overly Broad and Would Impose Significant Expense and Inconvenience on Non-Party ATC.**

The Federal Rules of Civil Procedure require courts to quash or modify subpoenas that subject a person to undue burden.  Fed. R. Civ. P. 45(d)(3)(A)(iv).  "When determining whether a subpoena *duces tecum* results in an undue burden on a party such factors as 'the relevance of the documents sought, the necessity of the documents sought, the breadth of the request ... expense and inconvenience' can be considered." *Trs. of Bos. Univ. v. Everlight Electronic Co.*, Ltd., No. 12-cv-11935-PBS, 2014 WL 12792496, at *3 (D. Mass. Sept. 8, 2014) (*quoting Behrend v. Comcast Corp.*, 248 F.R.D. 84, 86 (D. Mass. 2008).  When making the determination of whether a subpoena should be quashed because it is unduly burdensome, a court must afford a non-party such as ATC "special weight in evaluating the balance of competing needs." *Cusumano v. Microsoft Corp.*, 162 F.3d 708, 717 (1st Cir. 1998).

In order to best illustrate to this Court the massive burden placed upon it by the Subpoena it will be helpful to provide a brief overview of ATC's business and its relationships with the

Defendants. ATC is a publicly traded, real estate investment trust that, through subsidiaries and affiliates, owns or operates more than 40,000 communication sites across the United States. Bergendahl Decl. ¶ 10. It leases and/or licenses the use of many of these sites to wireless carriers, which use the sites. Bergendahl Decl. ¶ 11. As one might expect, the Defendants—which are some of the largest wireless carriers in the country—operate on many sites. Bergendahl Decl. ¶ 12. Indeed, the four named Defendants operate on nearly 36,000 of ATC's sites and these operations include approximately 550,000 antennas. Bergendahl Decl. ¶ 13. The antenna figure is an approximation because ATC relies on each wireless carrier's application in computing it, thus the actual figure could vary. Bergendahl Decl. ¶ 14. Further the agreements between ATC and the carriers allow the carriers to adjust the numbers of antennas operating at each site without immediately notifying ATC. *Id*. Accordingly, much of the information sought by Fractus could only be confirmed by ATC via an exhaustive and incredibly expensive site-by-site check. Bergendahl Decl. ¶ 15.

    A.    <u>The Subpoena is overly broad.</u>

As the deposition topics and the document requests show, there is virtually no aspect of ATC's business relationship with the Defendants (and with several other entities) that the Subpoena does not wish to explore. A subpoena is overly broad when it does not specify with sufficient particularity what documents it seeks or topics it wishes to cover. *See Everlight Electronics*, 2014 WL 12792496, at *4. Subpoenas are also considered overbroad "when they are 'couched in such broad language as to make arduous the task of deciding which of numerous documents may conceivably fall within [their] scope." *Id*. (quotation marks and citation omitted). The Subpoena runs afoul of both of these principles.

In *Everlight Electronics*, Boston University sued Everlight for patent infringement. *Id*. at

*1. The claim centered on the use of light emitting diodes ("LEDs"). *Id*. The school served non-party Apple, Inc. with a subpoena that, among other topics, sought all communication between it and the defendant relating to LEDs. *Id*. at *4. The Court found that this request was overbroad and thus quashed this aspect of the subpoena. *Everlight Electronics*, 2014 WL 12792496, at *4. Like the plaintiff in *Everlight Electronics*, Fractus sued the Defendants regarding their use of a pervasive technology. They now seek not only every scrap of information that ATC has related to the Defendants' use of that technology but also information ancillary to that technology, such as every location where that technology is used, detailed information on each of these locations, the financial ins-and-outs of ATC and the Defendants' agreements regarding those locations, and information about where the Defendants might engage ATC regarding the use of the technology in the future. To paraphrase the *Everlight Electronics* Court, "[s]uch requests are overly broad on their face as they fail to specify with particularity exactly what documents [and deposition topics] [Fractus] seeks from [ATC]." *Id*.

The Subpoena is also overbroad because the language that it employs does not meaningfully specify what topics the deposition will cover or what documents it seeks. "'Use of broad terms such as 'relate to' or 'relating to' provides no basis upon which an individual or entity can reasonably determine what documents may or may not be responsive.'" *Id*. (*quoting Western Resources, Inc. v. Union Pacific Railroad Co*., No. 00-2043-CM, 2002 WL 1822430, at *2 (D. Kan. July 23, 2002)). Further, deposition topics three and five contain language that does not limit their scope as required by the Rules. Specifically, topic three uses the phrase "includes, but is not limited to" and topic five impermissibly expands its scope when it says it "includes, among other things." Exhibit A, "Deposition Topics," ¶¶ 3, 5. Courts have held that this type of language impermissibly expands the scope of a subpoena. *See Innomed Labs, LLC v. Alza*

7

*Corp.*, 211 F.R.D. 237, 240 (S.D.N.Y. 2002) ("This language turns the subpoena into an overbroad notice, in contradiction to the 'reasonable particularity' required").

The Subpoena is overly broad because it does not meaningfully identify what documents it seeks or what deposition topics would be covered. It is thus not proportional to Fractus's needs, and, accordingly, it should be quashed.

      B.    <u>The expenses and inconveniences imposed by the Subpoena are unduly burdensome on ATC.</u>

An important factor when determining whether a subpoena is unduly burdensome on a non-party is the "expense and inconvenience" compliance requires. *LSI Corp. v. Vizio, Inc.*, 2012 WL 1926924, at *3 (D. Mass. May 24, 2012). The vast expense and inconvenience that ATC would endure were it to be compelled to comply with the Subpoena is abundantly apparent. As discussed previously, there is virtually no aspect of ATC's business relationship with the Defendants that the Subpoena does not seek to explore. Considering that the Defendants operate on more than 35,000 of ATC's sites, it is not inconceivable that there are millions, if not tens of millions, of documents that are responsive to the Subpoena's document request, and accordingly, the topics that a deposition could conceivably cover would be just as vast. Further obtaining the precisely accurate information that the Subpoena demands would be a staggeringly expensive undertaking. For instance, an audit ATC recently conducted reviewed approximately 10,000 sites, which cost nearly $20 million. Bergendahl Decl. ¶ 16. Simple arithmetic shows that to compile accurate information on the nearly 36,000 sites at issue would cost well over $60 million.

Accordingly, the expense and inconvenience imposed by the Subpoena are not proportional to Fractus's needs and thus it must be quashed. *See LSI Corp.*, 2012 WL 1926924, at *3.

      C.    <u>ATC's status as non-party affords it special protection that further shows the undue burden the Subpoena places on it.</u>

ATC is a non-party. Virtually all of the information, to the extent it is relevant, that Fractus seeks from ATC should be obtainable from parties to the underlying litigation – namely, the Defendants. Indeed, Fractus recognized this fact last fall when it agreed to indefinitely suspend the September Subpoena. Bergendahl Decl. ¶ 4.

A court is "required to limit the frequency or extent of otherwise allowable discovery if the same information 'can be obtained from some other source that is more convenient, less burdensome, or less expensive ... or [if] the burden or expense of the proposed discovery outweighs its likely benefit....'" *Mass. Delivery Ass'n. v. Coakley,* No. 10–11521, 2013 WL 5441726, at *2 (D. Mass. Sept. 26, 2013), reversed on other grounds, 769 F.3d 11 (1st Cir. 2014), (*quoting* Fed. R. Civ. P. 26(b)(2)(C)). "To obtain discovery from non-parties, a party must establish that its need for discovery outweighs the nonparty's interest in nondisclosure." *Bio Vita, Ltd. v. Biopure Corp.*, 138 F.R.D. 13, 17 (D. Mass. 1991); *see Cusumano*, 162 F.3d at 717 ("concern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs."). Where information is obtainable from a party to the litigation, it is more appropriate to obtain that information from that party than from a non-party. *See Accusoft Corp. v. Quest Diagnostics, Inc.*, No. 12-40007-FDS, 2012 WL 1358662, at *10 (D. Mass. April 18, 2012) (quashing non-party subpoenas where discovery could be obtained from the defendants); *CSX Transp., Inc. v. ABC&D Recycling, Inc.*, No. 2011-30268-FDS, 2016 WL 730716, at *3 (D. Mass. Feb. 23, 2016) ("[i]f the material sought by subpoena is readily available, either from a party to the action or from a public source, obtaining it through subpoena to a nonparty often will create an undue burden.") (internal quotations omitted); *Hasbro, Inc. v. Serafino*, 168 F.R.D. 99, 100 (D. Mass. 1996) ("[I]f documents are

9

available from a party, it has been thought preferable to have them obtained pursuant to Rule 34 rather than subpoenaing them from a non-party witness").

Here, Fractus seeks a vast array of information from ATC that should be readily available from the Defendants. This includes, but is not limited to, the following Subpoena document requests and deposition topics: Every contract between ATC and the Defendants; the amount ATC charges each Defendant; all communications between ATC and the Defendants; and, perhaps most absurdly, "any costs or expenses (including capital expenses, operating expenses, or otherwise) that a mobile network operator [*i.e*., the Defendants] … incurs relating to base station antennas that are located on U.S. cell sites." Ex. A, "Deposition Topics," ¶ 3. Fractus can seek this information from the Defendants. Merely because its discovery deadline is approaching does not mean that ATC should bear the burden of Fractus's dawdling.

In sum, the information sought by the Subpoena is not proportional to Fractus's needs and it imposes an undue burden on ATC because it is overly broad, poses a huge expense and massive inconvenience on a non-party, and virtually all the information is obtainable from the Defendants. Accordingly, the Subpoena should be quashed.

**II.    The Subpoena Seeks Disclosure of Confidential Commercial Information.**

The Court should also quash the subpoena because it requires ATC to disclose confidential commercial information, the release of which would greatly harm ATC. If a court finds that a subpoena would force the disclosure of "trade secrets or other confidential research, development, or commercial information" it may quash that subpoena. Fed. R. Civ. P. 45(d)(3)(B)(i).

The Subpoena attempts to compel the disclosure of some of ATC's most closely guarded confidential commercial information—specifically information regarding the rental rates and other fees and costs it charges to its customers. *See* Ex. A., "Documents Requested," ¶¶ 2, 3.

This information is hugely important to ATC as the release of this would allow competitors to undercut its prices and also would give the Defendants insurmountable bargaining power against ATC during its next negotiations. Bergendahl Decl. ¶¶ 18-19.

Commercial information may be properly treated as confidential enough to support the quashing of a subpoena where a company "'has historically sought to maintain the confidentiality of this information.'" *Gonzalez v. Google, Inc.*, 234 F.R.D. 674, 684 (N.D. Cal. 2006) (*quoting Compaq Computer Corp. v. Packard Bell Elec., Inc.*, 163 F.R.D. 329, 338 (N.D.Cal.1995)).  In *Gonzalez*, the government sought certain information from Google via civil subpoena. *Gonzalez*, 234 F.R.D. at 684.  Google argued that this information was confidential and thus the subpoena should be quashed because the information sought was not "known generally to the public" and because its disclosure could cause competitors to gain an advantage against Google. *Id*.  The Court found that Google met its burden in showing that the information was confidential. *Id*.  Like the information Google sought to protect, ATC's rent information is not available to the public and its disclosure would harm it competitively. Bergendahl Decl. ¶¶ 17-18. This harm would not only come from ATC's competitors but also its customers—including the Defendants—because they would know precisely what other companies were paying.  Bergendahl Decl. ¶19.  Unlike, say, consumer television shopping where prices are advertised and comparison shopping is encouraged, in the commercial cell site market rental prices are negotiated on a case-by-case basis, which makes the rates charged to each customer incredibly important to protect.  Bergendahl Decl. ¶ 20.  Accordingly the Court should quash the Subpoena. *See In re Vitamins Antitrust Litigation*, 267 F. Supp. 2d 738, 740 (S.D. Ohio 2003) (sustaining non-party's motion to quash where revelation of information sought by subpoena

could be used by parties to the litigation to commercially undermine non-party).[3]

## CONCLUSION

The Subpoena does not meet the proportionality standards of Fed. R. Civ. P. 26(b)(1), imposes an undue burden on ATC, in violation of Fed. R. Civ. P. 45(d)(3)(A)(iv), and further would require it to divulge confidential information, in violation of Fed R. Civ. P. 45(d)(3)(B)(i). Accordingly, ATC respectfully requests that this grant this Motion to Quash.

Respectfully submitted,

NON-PARTY AMERICAN TOWER CORPORATION

By its attorneys,

Dated: March 15, 2019                /s/ Allison M. O'Neil_____
Allison M. O'Neil (BBO # 641330)
Douglas R. Sweeney (BBO # 694319)
LOCKE LORD LLP
111 Huntington Avenue
Boston, MA  02199
617-239-0100
allison.oneil@lockelord.com
douglas.sweeney@lockelord.com

## LOCAL RULE 7.1 CERTIFICATION

In accordance with Rule 7.1, counsel certifies that counsel for ATC conferred with the Plaintiff and attempted in good faith to resolve or narrow the issue.

/s/ Allison M. O'Neil_____

---

[3] If the Court declines to quash the Subpoena as a whole, it should modify it to protect ATC from the revelation of its confidential commercial information.  *See* Fed. R. Civ. P. 45(d)(3)(B).

12

**CERTIFICATE OF SERVICE**

      I, the undersigned, hereby certify that on the 15th day of March 2019, this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and paper copies will be delivered by regular mail to those indicated as non-registered participants.

      /s/ Allison M. O'Neil